IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


RONALD LAJAMES          :
WOOTEN,
                        :
        Petitioner,
                        :      CIVIL ACTION NO. 09-0066-KD-C

vs.                     :      CRIMINAL NO. 06-0208-KD-C

UNITED STATES OF        :
AMERICA,
                        :
        Respondent.


## REPORT AND RECOMMENDATION

Petitioner, Ronald Lajames Wooten, a federal prison inmate proceeding *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 57; *see also* Doc. 58). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). It is recommended that Wooten's § 2255 motion be denied.

## FINDINGS OF FACT

1.      On direct appeal, the Eleventh Circuit Court of Appeals set forth the procedural history of this case and the legal issues raised on appeal in as

thorough and concise a manner as possible and, therefore, the undersigned

quotes at length from that opinion, only adding footnotes where appropriate

based upon the issues raised by petitioner.

On September 28, 2006, Wooten was indicted for being
a felon in possession of a firearm, in violation of 18 U.S.C. §
922(g)(1). Prior to trial,[1] the parties stipulated that the firearm

---

[1]    Prior to trial, "[t]he Government tendered the required initial disclosures to
defendant prior to or at arraignment[]" and agreed "to provide defense counsel with all Jencks
Act statements not later than the first day of trial." (Doc. 11, at 2) In addition, defense counsel
requested "a copy of the transcript of the December 8, 2006 detention hearing[]" to be used "in
the event it becomes necessary to impeach the agent who appeared on behalf of the
Government." (Doc. 18, at 2) Defense counsel also filed two motions *in limine* (Docs. 25 & 26),
both of which were granted by the court (Doc. 48, T.T. 2-4).

The record also reflects that Wooten was well aware of his right to plead guilty.
(*Compare* Doc. 11, Order on Arraignment, at 1 ("Defendant entered the plea of **NOT GUILTY.**
Counsel for Defendant is requested to contact the Assistant U. S. Attorney assigned to this action
immediately if Defendant intends to engage in plea negotiations. If Defendant decides to change
this plea, the parties shall file a Notice of Intent to Plead Guilty, or otherwise notify the office of
the undersigned Magistrate Judge, at or before the pretrial conference; the action will then be set
for a change of plea before a District Judge. **Except in extraordinary circumstances and for
good cause shown, in order for Defendant to be considered for a sentence reduction
pursuant to § 3E1.1(b)(2) of the Sentencing Guidelines, Defendant <u>must</u> file the Notice of
Intent to Plead Guilty <u>not</u> <u>later</u> <u>than</u> the date of the pretrial conference.**") *with* Doc. 49,
Sentencing Tr. at 21 ("We gave this defendant every opportunity in the world to plead guilty and
accept responsibility for what he did, up until the morning of trial. We would have given him the
low end. He refused to do that and now wants to come and get the same deal.")) The record also
makes clear that Wooten did not plead guilty to the charge because of his position, which
persisted through his May 11, 2007 sentencing, that the shotgun found in the Cadillac was not
his gun and he had no knowledge that it was in the trunk. (*Compare* Doc. 48, T.T. 8 (position of
the defendant, revealed by counsel, that he did not know there was a gun in the trunk of the
Cadillac and that he was fleeing police because of the marijuana, not because of the gun) & T.T.
77 & 78 ("The fact of the matter is, the shotgun was in the car. We admit to that. . . . The
problem is, what evidence has the Government presented, I'm talking evidence now, what
evidence has the Government presented that would prove to you beyond a reasonable doubt that
Ronald knew it was there? None. . . . He . . . thinks I'm about getting ready to be stopped by the

described in the indictment affected interstate commerce, and that the defendant had previously been convicted of a felony.

At trial, Detective Aaron Tucker of the Prichard, Alabama Police Department testified that on February 25, 2005, he saw a Blue Cadillac stopped in the middle of a street in Prichard known for drug transactions. The Cadillac, driven by Wooten, was blocking the roadway, and a man was standing beside the car with his head leaning into the window of the car. When Detective Tucker pulled behind the Cadillac, it turned on to a different street. Detective Tucker, who was driving an unmarked car, followed Wooten's Cadillac and attempted to pull him over. Tucker turned on his unmarked car's lights and siren, at which point Wooten sped away. Tucker then requested backup, as Wooten drove approximately 60 to 70 miles per hour on city streets, running red lights, until he was able to enter the interstate, where he led police on a high-speed chase through two separate jurisdictions. After Wooten exited the interstate, he sideswiped one car and rear-ended another, causing minor injuries to one driver and eventually disabling Wooten's Cadillac.

Detective Tucker testified that a search of the unlocked trunk revealed a loaded shotgun hidden behind car audio system components. According to Detective Tucker, the shotgun was too long to be hidden in the passenger compartment. The search also revealed marijuana, packaged for personal use, in the passenger compartment of the Cadillac. A check of the ownership of the Cadillac revealed that it belonged to Wooten's mother.

Wooten's mother, Janette Wooten, testified that the

---

police, and I'm a convicted felon and I'm sitting on a bag of marijuana.") *with* Doc. 49, Sentencing Tr. at 19 ("A man has a lot of choices, I made some bad ones. . . . Of course, Your Honor, **the things that I have done bad, I have served my time for.** But not admitting that that no gun was in the trunk, Your Honor, as stated Your Honor. Just you sentence me, just be lenient on me in my time because I would like to move on with my life."))

Cadillac came with speakers when she bought it, but that her son installed additional car stereo components, and she did not know about the stereo in the trunk. She said that she had never owned or possessed a shotgun.

At the close of the government's case, Wooten moved for a judgment of acquittal, arguing that there was insufficient evidence that he possessed or exercised control over the shotgun. The district court denied Wooten's motion. The jury found Wooten guilty and he proceeded to sentencing.

The presentence investigation report ("PSI") assigned Wooten a base offense level of 14, pursuant to U.S.S.G. § 2K2.1(a)(6)(A), because he was prohibited from possessing a firearm. The PSI recommended a 4-level increase to Wooten's base offense level, pursuant to U.S.S.G. § 2K2.1(b)(6), because he possessed the firearm in connection with another felony offense (possession of marijuana), and a 2-level increase for the obstruction of justice, pursuant to U.S.S.G. § 3C1.2, because Wooten endangered others by fleeing from police. With a criminal history category V and a total offense level of 20, Wooten's guideline range was 63 to 78 months' imprisonment.

Wooten objected to the PSI's two-level adjustment for the obstruction of justice, arguing that its application was improper in this case. Wooten also objected to the PSI's four-level increase for using or possessing the firearm in connection with another felony, arguing that the firearm was not actually used or possessed during a felony offense.

Over Wooten's objection to the § 2K2.1(b)(6) enhancement, the district court adopted the PSI's recommendations, finding that the firearm provided security and cover to facilitate Wooten's participation in illegal drug activity. After considering the circumstances of Wooten's arrest and the sentencing factors found in 18 U.S.C. § 3553, the court sentenced Wooten to a 75-month term of imprisonment. This appeal followed.

4

First, Wooten challenges the sufficiency of the government's evidence on his possession of the loaded firearm. Again, the government presented evidence showing that, after a lengthy, high-speed pursuit, police arrested Wooten in a car registered to, and owned by, his mother. The police found marijuana in the passenger compartment and a loaded shotgun hidden behind stereo components in the trunk. Wooten's mother testified that she did not own any firearms and was unaware of the existence of the stereo components.

In order to prove a violation of 18 U.S.C. § 922(g), the government must show that (1) the defendant was a convicted felon; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition was in or affecting interstate commerce. Here, the parties stipulated that Wooten was a convicted felon, and that the firearm affected interstate commerce.[2] Therefore, the only element at issue is whether Wooten knowingly possessed the shotgun.

Possession may be either actual or constructive. Constructive possession exists when a defendant (1) "has knowledge of the thing being possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion," or (2)

---

[2]     (Doc. 48, T.T. 20 ("Stipulation in the case of United States of America versus Ronald Wooten. The parties hereby stipulate that the following is true and correct and constitutes admissible evidence in this case: Number one, the firearm described in the indictment affected interstate commerce, as it was manufactured in Connecticut."); *see also id*. T.T. 70 ("Nor is it in dispute that the gun affected interstate commerce, which is a requirement for a gun case to be in Federal Court. The gun was made in Connecticut and was found in Prichard, in this District. That's not in dispute."); T.T. 77 ("Secondly, the Government has to prove that the gun was used in interstate commerce. The last time I checked, . . . there's no manufacturing plant for shotguns, rifles, pistols, or anything else in Alabama."); *see* Doc. 17 ("The parties hereby stipulate that the following is true and correct, and constitutes admissible evidence in this case: 1. The firearm described in the Indictment affected interstate commerce, as it was manufactured in Connecticut."); Doc. 18, at 3 ("Defendant has stipulated to the interstate nexus of the firearm[.]"))

has "ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband was concealed." Mere presence near contraband, or awareness of its location, is insufficient to establish possession. However, "flight from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself."[3]

Here, a reasonable trier of fact readily could find that Wooten had constructive possession of the shotgun. There is no dispute that the loaded shotgun was found in the vehicle Wooten was driving, a vehicle over which he exercised dominion and control. Although the vehicle belonged to Wooten's mother, she was unaware of the stereo components in the trunk, behind which the shotgun was hidden, and she testified that she had never owned or possessed a firearm. Additionally, the jury could reasonably infer knowledge of the shotgun, based on the weapon's concealment in the trunk and Wooten's attempt to evade arrest. Therefore, construing the evidence in favor of the government, there was ample evidence from which the jury would find, beyond a reasonable doubt, that Wooten constructively possessed the shotgun. Accordingly, the evidence was sufficient to sustain the conviction.

As for Wooten's sentencing argument, section 2K2.1(b)(6) provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." In United States v.

---

[3]    The trial court gave the following "flight" instruction to the jury: "The intentional flight by a defendant during or immediately after the commission of a crime or after he is accused of a crime that has been committed is not in itself sufficient to establish his guilt, but is a fact, which if proved, may be considered by the jury in light of all the evidence in the case determining guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury. Also, whether . . . there has been flight is exclusively a matter within the province of the jury." (Doc. 48, T.T. 90-91)

Rhind, 289 F.3d 690, 695 (11th Cir. 2002), we stated that the phrase "in connection with" should be given its ordinary meaning. The phrase appears throughout the Guidelines, and we have consistently held that it should be given an expansive interpretation. Thus, in United States v. Jackson, 276 F.3d 1231, 1234 (11th Cir. 2001), we noted that, in certain circumstances, mere possession of a firearm can be enough to apply a sentencing enhancement utilizing the "in connection with" language. According to the ordinary and natural meaning, the phrase "in connection with" does not require proof that the firearm actually facilitated the other felony offense.

We also have recognized that guns are the "tools of the drug trade," as there is a "frequent and overpowering connection between the use of firearms and narcotics traffic." In Rhind, we rejected the idea that the presence of firearms in the same vehicle as counterfeiting supplies was "mere coincidence," noting that "it would be reasonable to conclude that the presence of the firearms protected the counterfeit money from theft during the execution of the felony." Moreover, contrary to Wooten's suggestion, we have never required that a firearm be located within arm's reach for the enhancement to apply.

Here, the district court did not clearly err by determining that Wooten possessed the shotgun "in connection with" his possession of marijuana, for purposes of § 2K2.1(b)(6). The marijuana[4] and the shotgun were in his possession at the same time. The shotgun need not have facilitated the marijuana possession, but here it did have the potential to do so. There is a strong connection between firearms and drugs. Moreover, the weapon, located in Wooten's unlocked trunk, was readily accessible to him if he needed its protection. Accordingly, we

---

[4]     The Presentence Investigation Report reveals that as a direct result of the marijuana found in the Cadillac, Wooten entered a counseled guilty plea in state court on December 6, 2005, to possession of marijuana in the first degree. (*See* Doc. 34, at 10 (sealed report)) Under Alabama law, unlawful possession of marijuana in the first degree is a Class C felony. Ala.Code § 13A-12-213.

affirm his sentence.

(Doc. 54, at 3-10 (most internal citations omitted; footnotes added)) This opinion affirming Wooten's conviction and sentence was issued as mandate on December 7, 2007. (*See id.*)

2.     Wooten filed his motion to vacate under 28 U.S.C. § 2255 on February 2, 2009. (Doc. 57, at 11) In the memorandum attached to his § 2255 motion (Doc. 58), petitioner raises the following claims which he contends entitled him to relief:

**Counsel Was I**neffective for failing to:

A.     Investigate the Government[']s Case Prior to Trial;

B.     Challenge, Via Motion for a Directed Verdict, The Nexus between the firearm in question and Interstate Commerce.

C.     Challenge this Court's Use of Non-Pattern Jury Instructions to Inform the Jury Intentional Flight Can Constitute evidence of Defendant's guilt.

D.     Failed to advise Movant of the Advantages of Entering a Guilty Plea Under North Carolina v. Alford, 400 U.S. 25 (1970), and Pursue Meritorious Issue Raised and Preserved at Trial and at Sentencing.

E.     Failure to Show and Object at Sentencing That The Marijuana Movant Possessed Did Not Meet State or Federal Felony requirements For the Amount or Quantity Meet Misdemeanor Possession definitions.

(*Id.* at 2 (emphasis in original))

3.      The Government filed a motion to dismiss on April 9, 2009.

(Doc. 65)

>       Wooten simultaneously filed two documents relating to his purported motion. The first document is his "motion" – produced on an 11 page form which contains no claims or arguments, and refers to an "attached memorandum." The second document purports to be the "attached memorandum." However, this document is not really a "memorandum," at all. Wooten simply lists five concise claim headings, utterly failing to include any factual account, record references, or legal argument.

>       These documents, considered separately or together, do not constitute a valid § 2255 motion and are due to be dismissed. Although *pro se* pleadings certainly are entitled to a liberal construction, it is well settled that such scant and unsupported claims fail on this basis, alone.

(*Id.* at 1-2 (internal citations omitted))

4.      Petitioner has not filed a reply to the Government's motion to dismiss, though specifically extended such an opportunity. (*Compare* Doc. 61 ("The petitioner is **ORDERED** to file and serve any reply on or before **May 13, 2009.**") *with* Docket Sheet))

## **CONCLUSIONS OF LAW**

9

1.      28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.      In this instance, Wooten contends, in a conclusory manner, that constitutionally ineffective assistance of trial counsel entitles him to the relief afforded by 28 U.S.C. § 2255. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S.668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686, 104

10

S.Ct. at 2064.

3.      With respect to the first prong of the standard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689, 104 S.Ct. at 2065; *see also Hagins v. United States*, 267 F.3d 1202, 1204-1205 (11th Cir. 2001) ("A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002); *Williams v. Head*, 185 F.3d 1223, 1227 (11th Cir. 1999) ("[C]ourts should 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."), *cert. denied*, 530 U.S. 1246, 120 S.Ct. 2696, 147 L.Ed.2d 967 (2000).

> A jury trial is, by its nature, an enterprise that is filled with imponderables from the viewpoint of a trial lawyer. It is an undertaking that calls not only on the lawyer's head, but also on his heart and nerve. At times in the trial arena, audacity or imagination or patience accomplish more than pure logic might suggest it possible. The truth is that it is often hard for even a good lawyer to know what to do. Trying cases is not an exact science. And, as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that allows for great precision or for a categorical

approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."

Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.) (citations in original omitted),

*cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994);[5] *see*

*Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("The

performance prong requires a petitioner to establish that counsel performed

outside the wide range of reasonable professional assistance and made errors

so serious that he failed to function as the kind of counsel guaranteed by the

Sixth Amendment.").  One panel of the Eleventh Circuit has stated that

"ordinarily, . . . lawyers' acts or omissions that do not rise to the level of

professional malpractice, a fortiori, cannot amount to a constitutional

---

[5]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins, supra,* 267 F.3d at 1205, citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

violation."  *Smith v. Singletary*, 170 F.3d 1051, 1054 n.5 (11th Cir. 1999); *see also id*. ("We do not even hint, however, that every act of legal malpractice amounts to ineffective assistance of counsel under the Constitution.").

4.     The prejudice prong "requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland, supra*, 466 U.S. at 687, 104 S.Ct. at 2064; *see also Butcher, supra,* 368 F.3d at 1293 ("The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense.").

> To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability is a probability sufficient to undermine confidence in the outcome." "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."

*Id*. (internal citations omitted).

5.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds."  *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oates v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d

243 (1999); *see also Butcher v. United States*, *supra,* 368 F.3d at 1293 ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

6.     An evidentiary hearing must be held on a motion to vacate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). If the petitioner "'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citations omitted). However, a petitioner is not entitled to an evidentiary hearing if his claims are patently frivolous, if they are based on unsupported generalizations, or if they are affirmatively contradicted by the record. *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). This is true even if the claims all revolve around alleged ineffective assistance of counsel. *See id.*; *cf. Saunders v. United States,* 278 Fed.Appx. 976, 2008 WL 2168739, *3 (11th Cir. 2008) ("Saunders was not entitled to an evidentiary hearing on his ineffective assistance of counsel claim because he failed to allege facts that, if true, would entitle him to relief.");[6] *Franklin v. United States*, 227 Fed.Appx.

---

[6]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

856, 860-861 (11th Cir. 2007) ("Because the district court did not abuse its discretion in resolving Franklin's 'ineffective assistance of counsel' claim without conducting an evidentiary hearing, its denial of Franklin's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence is **AFFIRMED**."), *cert. denied*, ___ U.S. ___, 128 S.Ct. 933, 169 L.Ed.2d 771 (2008). Wooten is not entitled to an evidentiary hearing in this case inasmuch as his ineffective assistance of counsel claims are either frivolous, affirmatively contradicted by the record, or they are based on unsupported generalizations. *See Holmes, supra*.

7.     Petitioner's first claim is that counsel was ineffective for failing to "[i]nvestigate the Government's [c]ase [p]rior to [t]rial[.]" (Doc. 58, at 2) This claim is patently frivolous not only because the record in this case reflects that defense counsel did investigate the government's case, thereby establishing that counsel's performance was not deficient in this regard, but also because petitioner has not supported this generalization with facts establishing that a more probing investigation would have resulted in a different outcome (i.e., a not-guilty verdict) with respect to his trial.

8.     Petitioner next alleges that trial counsel was ineffective because he failed to challenge, via a motion for a directed verdict, the nexus between

the firearm in question and interstate commerce. (Doc. 58, at 2) This argument

is, again, patently frivolous, because trial counsel reasonably stipulated to the

fact that the shotgun in question, which was manufactured in Connecticut and

found its way into the trunk of the Cadillac petitioner was driving on February

25, 2005 in Prichard, Alabama  (*see, e.g.,* Docs. 17 & 48), affected interstate

commerce. *See Clay v. United States*, 355 F.3d 1281, 1286-1287 (11th Cir.)

(finding that evidence that firearm was manufactured outside the state in which

the possession occurred is sufficient to support a finding that the possession

was "in or affecting" interstate commerce), *cert. denied*, 543 U.S. 999, 125

S.Ct. 626, 160 L.Ed.2d 456 (2004); *United States v. Dupree,* 258 F.3d 1258,

1260 (11th Cir. 2001) ("[Section] 922(g) requires only a minimal nexus to

interstate commerce, and by brandishing a firearm that was manufactured in

California and found in his  car, Dupree's actions satisfy this test."(internal

citation omitted)); *cf. United States v. Perry*, 240 Fed.Appx. 361, 362 (11th

Cir. 2007) ("At Perry's trial, Special Agent Michael Gistinger with the Bureau

of Alcohol, Tobacco, Firearms and Explosives testified that the gun involved

in this case-a Mossberg pistol grip shotgun-was manufactured in Connecticut,

where Mossberg is based, and traveled in interstate commerce. Agent

Gistinger's testimony provided sufficient evidence that the gun Perry

possessed was in or affected interstate commerce."); *United States v. Lamb*, 162 Fed.Appx. 889, 891 (11th Cir.) ("In *McAllister*, we held that § 922(g) requires only a minimal nexus to interstate commerce. We concluded that evidence that a gun manufactured in California and shipped to South Carolina was sufficient to establish the nexus. Likewise, in *Scott*, we held that testimony that the firearm possessed by the defendant was manufactured in California and had moved in interstate commerce to Georgia, where the defendant was arrested with it, was sufficient to establish nexus to interstate commerce. Finally, in *Dupree*, we held that the government can establish § 922(g)'s element of interstate commerce by showing that the defendant possessed a firearm that was manufactured out of state." (internal citations omitted)), *cert. denied*, 549 U.S. 902, 127 S.Ct. 225, 166 L.Ed.2d 179 (2006). It would have been quite the feat for counsel to make this stipulation and then, like a whirling dervish, tergiversate and challenge the nexus between the firearm and interstate commerce. That counsel did not chart this route marks not only his good sense but serves to underscore the fact that he was not deficient in this regard given the state of the law in the Eleventh Circuit on this element of 18 U.S.C. § 922(g).

      9.    Wooten contends that trial counsel should have challenged this

Court's use of a non-pattern jury instruction to inform the jury that intentional flight can constitute evidence of defendant's guilt. (Doc. 58, at 2) Given the Eleventh Circuit's specific citation in this case to *United States v. Borders*, 693 F.2d 1318, 1324-1325 (11th Cir. 1982), for the proposition that "'flight from custody . . . [is] admissible as evidence of consciousness of guilt, and thus of guilt itself[,]'" (Doc. 54, at 7), there can be no finding by this Court that counsel was deficient in failing to challenge this Court's "flight" instruction since that instruction (*see* Doc. 48, T.T. 90-91 ("The intentional flight by a defendant during or immediately after the commission of a crime or after he is accused of a crime that has been committed is not in itself sufficient to establish his guilt, but is a fact, which if proved, may be considered by the jury in light of all the evidence in the case determining guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury. Also, whether . . . there has been flight is exclusively a matter within the province of the jury.")) was much less pointed than the proposition from *Borders* favorably cited by the Eleventh Circuit.

10.     Petitioner's contention that counsel failed to advise him of the advantages of entering a guilty plea under *North Carolina v. Alford*, 400 U.S.

25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (Doc. 58, at 2), is belied by the record. That trial counsel informed petitioner of his right, and the advantages of, pleading guilty is apparent not only from the contents of the arraignment order (Doc. 11) but, as well, from the comments of the Assistant United States Attorney during sentencing on May 11, 2007 (Doc. 49, at 21 ("We gave this defendant every opportunity in the world to plead guilty and accept responsibility for what he did, up until the morning of trial. We would have given him the low end. He refused to do that and now wants to come and get the same deal.")). Wooten, no stranger to the criminal justice system, certainly appreciated the advantages of a guilty plea but did not desire to enter a guilty plea to the instant charge given his consistent position, which was reiterated at sentencing (*see* Doc. 49, at 19-20), that the shotgun found by police in the Cadillac he was driving on February 25, 2005, was not his gun and that he had no knowledge that it was in the trunk of the vehicle. In light of the foregoing, petitioner has established neither prong of the *Strickland v. Washington* standard.

11.    Wooten's final conclusory and frivolous allegation is that counsel failed to object at sentencing to the fact that the amount of marijuana he possessed on February 25, 2005 did not meet state or federal felony

quantity requirements. (Doc. 58, at 2) By the time petitioner was sentenced on May 11, 2007 for violating 18 U.S.C. § 922(g) (Doc. 49), he had already pled guilty in state court to first-degree possession of marijuana, a Class C felony under Alabama law, and completely served his sentence for that offense, that conviction and sentence arising from the events of February 25, 2005 (*see* Doc. 34, at 10 (sealed document)). Because petitioner had already pled guilty to felony possession of marijuana in state court, trial counsel had absolutely no basis upon which to claim during Wooten's May 11, 2007 sentencing that the amount of marijuana he possessed on February 25, 2005 did not meet state or federal felony quantity requirements. Therefore, trial counsel was not deficient in this regard.

12.    In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Wooten's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

### CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**.

The instructions which follow the undersigned's signature contain

20

important information regarding objections to the report and recommendation

of the Magistrate Judge.

      **DONE** this the 26th day of May, 2009.

                               s/WILLIAM E. CASSADY
                               **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**